Good afternoon, Your Honors. May it please the Court. I'm Merrill Davidoff. I represent the State of New Jersey on this appeal. With me at council table, my colleague, Associate Caitlin Coslett, my co-counsel from New Jersey, Peter Perlman from the Cohn-Liflin Firm, and Carol Jacobson, who is Assistant Attorney General in the Division of Law in New Jersey, is also here at council table. Do you want to reserve time? I do, Your Honor, up to five minutes or whatever I have left, if that would be. Okay, well, we're not too strict about that, so give him five minutes, Ebony. Let me start by saying we really understand the background. We know that New Jersey filed the lawsuit, wants to be in state court, doesn't want to be in state court that has been moved to New York. I mean, wants to be in state court in New Jersey. We understand that. We understand that the defendants, and we also understand that although Judge Thompson certified the question for 1292B appeal, a motion panel of our court denied that, and that's under a different number, and that's over. I've checked and I've checked our IOPs, and they really don't give us the authority. If a motion panel grants certification under our IOPs, Internal Operating Procedure, the merits panel can change that and decide the case is not appropriate for interlocutory appeal, and the IOP so states. It doesn't state the other. I will raise that with our rules committee when next we meet, but in any event, so we're here on an appeal from the denial of, from Judge Thompson's denial of your motion to remand. Yes, Your Honor, that's right. Okay, so with that set, so I saved you all that time to explain. We checked the IOPs too, and we agree with Your Honor. Your Honor, I have some of the statutes in a hand up if I may approach. Sure. Because I think it just might be fair. You have three copies? I have a distributed copy. No, I don't care about the law clerks. What about us? I think I've got enough here, Your Honor. Okay. I think I've got them already, but that's all right. Okay. Can I have one? Oh, thank you. And these are just, these are just... Why do you have three pages and I only have one? Probably because... You gave him more copies. With all that lead in, what are we doing with the motion? You responded on the motion, right? The motion, the motion, we did respond. We briefed it. It was before the denial of the I'm going to address the motion to dismiss for lack of appellate jurisdiction. I think it would be more coherent if I could talk a little bit about the merits before I did that. Before jurisdiction? Well, we sort of think jurisdiction comes before the merits, don't you? I mean, if we don't have jurisdiction to hear you, then you have nothing to argue. Well, I think you have jurisdiction to hear my argument. Whether you have jurisdiction to hear the appeal is another question Judge Sloviter... You can do it. It's your time. No, I... At least we think, my chambers and I, think we want to focus on our jurisdiction first. All right. Well, I'm, the only, I will if Your Honor wants me to. The only part of the Cohen versus Beneficial doctrine that I think is relevant, and that's why I think the merits are relevant, the second prong of Cohen versus Beneficial, the collateral order analysis, is the importance of the issues. And I think the importance of the issues is critical. We have... Only if it can't be, only if it's not arguable or at the end of the case. That's the third part. Well, that, there's actually, just to truncate a little bit, there's two parts of Cohen that are important. It doesn't say unreviewable. It says effectively unreviewable. Yes. And that's what all the cases say. It doesn't say that there should be a technical construction. It says that there should be a practical construction. And I think I can lay out for Your Honors why, in this case, a practical construction makes this effectively unreviewable. Okay. To do that, I have to presume that you would rule in our favors, Your Honors, on the merits questions. So I hope you'll indulge me on that, Judge Slovut. I don't think that's an assumption that you can make, because it's a very difficult merits issue as to the conflict between the statutes. But go ahead. Yes, it is. And I'm not trying to belittle it. But the courts in the remainder of the country, and it never reaches the Court of Appeals because of the many statutes that prevent courts of appeals, such as 1447D, from reviewing remand orders. But there are many district courts in the remainder of the United States that have ruled that Section 22A is the more specific statute and that Section 22A trumps bankruptcy removal. And I'd like to come back to that later because I have something to add to that, which is similar to what Judge – Is that what the Second Circuit held in WorldCom? No. The Second Circuit held the reverse, Judge Slovut. And that's a pretty good court. It is. It's an excellent court. I think they were down on their game when they wrote that opinion. That's one of the reasons I thought – It's a pretty good judge, too. Yes. And that's one of the reasons I wanted to address the merits, and I thought it would be more coherent if I addressed the merits. You thought it might convince us. Well, I think what convinces you – suppose, Your Honor, for a moment that you disagree, that Your Honors in this court disagree with Judge Cabranes on the Second Circuit. Suppose on the 22A question, and I think equally important on the related to jurisdiction question because in this circuit we've got the PAYCOR case, we've got the – which I think, Your Honor, was on the panel, even though it was a long time ago, of PAYCOR. Yeah, it's been here a long time. Right, yeah. And we made a Rule 28J submission. We submitted the very recent case of In re Grace v. Shakarian, which is to the same effect. I was wondering whether Grace really basically says there's a big distinction here, and one is if the indemnity is based on some kind of products liability, common law cause of action, then you have too much intervening to be related to. But if, like the other cases, there's a contractual indemnification obligation that it is related to, and I thought Grace recognized that distinction, or at least lined up squarely on the products liability side, and you still had those other cases. I think, what, there was Stowe, was that one of them? Well, the Stowe and Belkafein cases, which I think are their picture postcard cases, Judge Rustani, are cases where you have a payment obligation from a bankrupt corporation, the payment obligation arises before the corporation declares bankruptcy. After the corporation declares bankruptcy, the bankruptcy court's order, immediate order, prevents the bankrupt corporation from paying the pre-petition wages. And so there's a direct conflict between the federal bankruptcy statute and state statutes such as the Pennsylvania's WPCL wage payment and compensation law, which holds officers personally liable if the wages aren't paid because they can't pay the wages out of the corporation. And I think both Belkafein and Stowe, I think, fall into that category. And I don't think the rule in PAYCORP and Federal Mogul Global Judge Which I know a little bit about. Yes, you wrote it, Judge. And Grace and Combustion Engineering, I don't think that they are limited to common law indemnity. I think the rule that was stated in all four of those cases, Judge Rustani, was will there be an intervening lawsuit before indemnification is ordered. Well, I thought Belkafein, Allegheny Health, and Stowe all represented some kind of legal or contractual immediate obligation to indemnify without a separate lawsuit over liability. Which we didn't have in Federal Mogul Global. Right, but that's not this case, Judge Rustani and Judge Sloveder, because in this case, first of all, we have a federal policy against indemnification in Securities Act cases. And that's the Eichenholz case, and I think we cited another one in our brief, but it's certainly the Eichenholz case in this circuit, which was followed by the 11th Circuit in HealthSouth, cited just last year, and Gilman v. Continental Airlines, which is also in this circuit. So there's a policy against indemnification. Mr. Davidoff, your yellow light is on, and you have never gotten to the basic question before us, which is do we have jurisdiction to hear this? And I'm going to cut this up if it's too long. I'm trying. Because we have to hear why we have jurisdiction. They have a perfectly – they have a motion. You have a motion to dismiss, and they have a motion to dismiss. Right, which we've opposed. Here's the basic answer. And your red light is on, but I'll give you extra time, because you went against my suggestion. You went right into the merits, and you really have to discuss jurisdiction first. All right, that's fair, Your Honor. It's right. It's not only fair. Okay. Go ahead. The point I was going to make is if, in fact, there is a conflict, and I believe there is, both on the 22A question and on the related to jurisdiction question, here is the procedural morass into which you're ordering this litigant. And this litigant is not an ordinary litigant. It's not like Mr. Dieffenbach, who was a pro se litigant. It's a state sovereign. You're sending a state sovereign, first removing it to federal court, sending it to New York under a JPMO. We're not doing that. The multi-district litigation panel will do that. Right, but it's ineluctable. We go to a circuit where this court, if we're right, knows that the law, the binding law, is going to be to the contrary of the law that New Jersey argued and that New Jersey believes would prevail here. More importantly, after that case is over, after it's pretried, first we might go to the Second Circuit. If we go to the Second Circuit, the Second Circuit is going to apply the law in WorldCom. At the end of the pretrial process under 1407 and Milberg v. Lexicon, that case will be sent back to the District of New Jersey. When it is sent back, the District of New Jersey under 12H3, this court, if this court reviews it, has a continuing obligation to review subject matter jurisdiction. There is no law of the case doctrine on subject matter jurisdiction. I think Judge Hardiman, shortly after you were elevated, I think you wrote an opinion to that effect, the counsel tree versus federal communications commission opinion, shortly after you were elevated to this court, that the law of the case doctrine doesn't govern. So after years of litigation, we're back in a court that we don't believe we have any obligation to be in. We believe we have a right to be in state court. If the district judge doesn't reexamine jurisdiction, on eventual appeal to this court, after years of litigation, years of expense and waste, and it's not just expense and waste, being dragged through the federal judicial system, we finally get to this court on, quote, eventual appeal. And this court, like it did in Dieffenbach, declares, well, there is no subject matter jurisdiction for either. Well, Dieffenbach is not a presidential opinion. No, I know, Your Honor. Neither is the other one. Neither is the one the defendant cited. Right. Let's talk about the Supreme Court's analysis of the third element of the collateral order doctrine. Yes, Your Honor. I used to teach this subject, so I know these cases a little bit. And it's my understanding, whether right or wrong, because it's the Supreme Court, it's right, that they're very strict about what is eventually appealable. I'm going to just read. And take Flanagan. Take the criminal defense cases where a criminal defense lawyer was held disqualified so that the defendant had to go through the entire trial before he could get the court to determine whether he should have been disqualified or not. And the Supreme Court said it's appealable. Now, if a criminal defendant can't effectuate his right, his constitutional right to a lawyer, why is New Jersey in a different position? Just because it's going to take a long time. Well, it's not just because it's going to take a long time, Your Honor. We have this mythological creature in federal law called this unitary body of federal law. And it's a convenient creature, even though it's usually mythological. But we know that that creature is gravely wounded and limping in this case because we know the law of the Second Circuit is widely divergent from the law in all the other circuits and certainly the district courts in all the other circuits. There's no other circuit that disagrees with it. And, in fact, after that analysis came out, didn't things shift and the district judges started to follow it? I don't think so, Judge Rustani. We discussed that in a footnote in our reply brief, and I think they were citing the case, but that's a lot different than following it. Yeah, but why is New Jersey? I mean, there are other state entities that have been moved to the litigation in New York. Isn't that right? I mean, New Jersey would not be the only one. Yes, Your Honor, although New Jersey is the only one where the JPML vacated a CTO awaiting a decision of this court. The defendants are fond of pointing out that 25 cases were sent to New York, but this is the only one where the JPML vacated the CTO because this appeal was pending before this court. New Jersey is important. This handout, and I probably won't have time to discuss this in the detail that I hoped, what we did here was we bolded only some of the language from SLUSA. SLUSA is the Securities Litigation Uniform Standards Act, and that was the complete rewrite of the securities laws in 1998. Well, we know that there's a distinction. I mean, there's a conflict between the federal statutes. I mean, we understand that, but I can't get over, frankly, the collateral order issue. And you haven't persuaded me that the Supreme Court would change its very, very strict construction. You agree that it has a very strict construction. Well, I agree it has a strict construction, but they use the words effectively review, and they use the words practical construction. And how can there be effective review after a lengthy process where we're effectively operating? New Jersey has to deal with the sharply contrasting laws, law from two different circuits. And if I could have just one more moment, Your Honor. If they come back to New Jersey under lexicon, as they will, they literally have to try the entire case. This is not a small case. After operating under the Second Circuit's law, before the district court in New Jersey, before they get an eventual appeal to this court and a declaration that all the courts were ultra viras, all the courts did not have subject matter jurisdiction and lacked the ability to hear this case. And with respect to the criminal case, we did cite in our brief Pennsylvania v. Newcomer, which is a decision from this circuit, which is to the opposite effect. And I would analogize to one other situation. We're all familiar with the recent Supreme Court decision in Iqbal. That's a widely recognized exception where you've got a government official dragged into court, and it's typically recognized that under the collateral order doctrine, the government official has a right not to be in court and not to have to go through the whole proceeding before he finds out at the end of the case that he had a right not to be in court. Do you talk about the qualified immunity? Yes, I am. I'm analogizing it to qualified immunity, Judge Rustani. Yeah, but the Supreme Court made that in the Forsyth case. Can I ask if you have any case which says, what you're arguing is a practical loss of rights. And everything else I've read that is precedential seems to be talking about technical appealability. But you said these words, effectively appealable, somehow bring in this practical aspect of lost rights. And I was just wondering where you're getting that from. Anything else is on your side on that. Well, the Supreme Court in Cohen v. Beneficial, the case that laid down the collateral order doctrine, is said effectively reviewable. Yeah, but Mr. Davidoff, it construed Cohen in not only in Flanagan, but also in Firestone Tire. And in both cases, they held that the pretrial denial of a motion to disqualify counsel, one was a civil case and one was a criminal case, is not appealable prior to trial. Now, practically, you know and I know that if a criminal defendant goes through a whole trial with a lawyer and he has a constitutional right to the lawyer of his choice. I mean, I was amazed when Flanagan came out. But that's the law. It's the Supreme Court's construction. I don't know what we can do about that. Well, I don't think it's any more analogous than the qualified immunity doctrine. Oh, yeah, but qualified immunity is also the Supreme Court. And that's Firestone. Right, and that's... And Firestone, no, it's not Firestone. The case that I was in... You've got me at a disadvantage, Your Honor, because you taught this. But let me at least, just to get out my point, we have a case here where a state sovereign, and I handed up some of the provisions in the 98 law where Congress was extremely diligent in preserving the rights of state sovereigns to bring their own actions in state court and to be remanded back. The command of 22A is not only reenacted in 22A, it's in 77PD4. This is not an ordinary litigant. There is a policy... Your red light is on. I'm sorry, Your Honor. You took... And you asked for five minutes of public time. You will have it. And unlike the Supreme Court, we will not limit you to what they say. You're being very kind, Your Honor. Well, no, he's taught. Thank you, Your Honor. Do you have anything to ask? Okay. You are? Mr. Greenbaum. Okay. Oh. You have three people arguing. It's a mistake, but I wasn't going to stop. You have the right to do that. But I will cut you off in the time. You have four minutes, Ms. McGarry has nine minutes, and Mr. McLean has two minutes, presumably you each will have something different to say. Go ahead, Mr. McLean. May it please the Court, Jeffrey J. Greenbaum, I'm going to limit myself to the issue of this Court's jurisdiction. Good. Ms. McGarry will be addressing the merits of the appeal, and Mr. McLean is here only in the event that the Court has questions as to supplemental jurisdiction as to Ernst & Young. So if I can address the jurisdictional issue. I think it's first and foremost and, frankly, dispositive on this appeal. As Your Honor correctly noted, the division's motion under 1292B was denied, and the sole basis asserted for this Court's jurisdiction is 1291 and the collateral order doctrine. And the U.S. Supreme Court made very clear that standing alone in order denying remand is not final and immediately appealable. But isn't he right that as a practical, notwithstanding all my questions to him, that as a practical matter it is not reviewable afterwards? He's going to go through a multi-district litigation case, and they're going to be swept up in all of that and a lot of pressure for settlement. And it is practically unreviewable, right? Maybe not technically, but practically. And shouldn't we finally say, look, Supreme Court, you're going down the wrong side? Well, Your Honor, the Supreme Court has weighed in on that subject as recently as three months ago in the Mohawk v. Carpenter, Mohawk Industries v. Carpenter opinion. And Justice Sotomayor made very clear that the exceptions to the rule of finality under the collateral order doctrine must be narrowly construed. And she reiterated that classes of cases for the collateral order doctrine must remain narrow and select in its membership. And she found that there are other safety valves, such as 1292B, even mandamus, that should come before the collateral order doctrine is used. And in that case, it involved the attorney-client privilege, which in my opinion is a very important right. But she found there were other ways to review it. And I don't think I have to go any further than a very cogent decision by this Court, authored by Judge Slobiter in the Ingrid Briscoe opinion, in which the Court addressed this very issue. Now, that was the diet drug case, and in the context it was a mandamus appeal. But the Court noted that no one even asserted that the collateral order doctrine would apply. And the Court noted, nor could they reasonably do so. And there the Court rejected the very argument that's being made by the plaintiffs here, that they could not effectively review this order on appeal. And the Court found that merely because there was going to be litigation expense and delay was not a sufficient ground to come within the third requirement of the collateral order doctrine. And it said that the Norman Federal Court is to await final judgment, and the plaintiffs, like any other plaintiff, must incur the costs necessary for litigation. You agree, as I gather from the briefs, you agree with Mr. Davidoff that it is an important question. It's very important, Your Honor. So I think everybody agrees that the first two parts of the collateral order doctrine are here. I know Mr. Davidoff wanted to explain to us why it was so important. But as I read the briefs, that's not at issue. Any failure to meet one requirement is fatal. It's not a balancing test. And it's important, but I'm a patient man, and I can wait until the final appeal on review. I mean, after all, New Jersey is dealing with the pensions of New Jersey people. You know, this isn't a... Your Honor, they are no different than the 14 other governmental entities that are already before Judge Kaplan. Who are those? What kind of... They are the state of Washington. There's a state in there. They are municipalities and counties in California. But a state entity in Washington is almost in the identical situation there before Judge Kaplan. And I don't believe this is any sovereign interest that's being asserted here. They're a litigant. And they're really no different than the 42 other litigants, the cases that are now before Judge Kaplan. Do you have any questions for him? Thank you, Mr. Fimre. Thank you. Thank you for keeping to your time. Good afternoon, Your Honors. Mary Elizabeth McGarry, just to be clear on the time, Mr. McClain has very kindly agreed to exceed me his two minutes unless the Court has some specific questions. And you're going to tell us why it's an important question. Is that right? No, I think we've agreed it's an important question. The question has already been addressed that the Supreme Court says it's unfortunate that you have to go all the way, but you have to go all the way through the case to have it reviewed. Otherwise, every... So you're going to assume that we have jurisdiction and talk to us about the merits. Well, the Court decided to hear the jurisdiction with the merits, so I have no choice, although... We had no choice. I mean, we couldn't hear one without the other. Right. So I hope you never get to my arguments, but in the event you do... Here we are. Here we are. If the plaintiffs lose their case, how does that affect the bankruptcy estate? If they lose the case, then there would be fewer damages entered against the individuals have rights of reimbursement of defense costs and indemnification. So their claims against the estate will be lower. As the state of New Jersey did, the individual defendants all filed proofs of claim in the bankruptcy, asserting their rights to indemnification and to... Well, but you're assuming that those claimants are entitled to indemnification. That would need to be adjudicated, wouldn't it? It would need to be adjudicated by the bankruptcy court. That's not something that gets adjudicated at this juncture. In Belka Fine, the Court rejected the argument that because someone's bankruptcy claim is contingent, that that would be sufficient grounds to deny related to jurisdiction. And the fact of the matter is, in addition to the state of New Jersey's $110 million claim, there are hundreds of billions of dollars of claims that have been filed against these individuals. There is not enough insurance money to cover it. The insurance money will not... So it is inevitable that these individuals are going to have to turn to the estate. The bankruptcy court already authorized the insurance... Why would they turn to the estate if they win this case? Well, if they win this case, but there are also... That's my question. What impact does it have on the estate of the debtor if Mr. Davidoff and his team lose this case? If this case is litigated in New Jersey State Court and they lose, what impact does that have on the estate? That's one fewer case that has to be subject to an indemnification claim where the indemnities are seeking reimbursement. And it's one... The very likely defense costs are going to eat up all the insurance, so we're going to be looking to the bankruptcy state for payment of defense costs. And then if there's any adverse judgment, not just in this case, but in the many other cases out there, then they will be valid claims for indemnification. But aren't the defense costs static, regardless of whether the case is litigated in state court or federal court? Well, it's obviously less efficient to have 44 cases, which is now before Judge Kaplan arising out of Lehman, and then a separate case going forward on a separate track in state court with a separate trial. So that would be... Cognitive scale. But it's... Right, but there would be higher defense costs if they're separate. And those defense costs are incurred by the estate of the debtor, not by the insurance carrier? The bankruptcy court has authorized... There was a motion made in bankruptcy court, which the state of New Jersey weighed in on, made a filing in bankruptcy court, even though it says this case is not related to. And the bankruptcy court said, I am authorizing the proceeds of the insurance policies. The policies belong to the estate. The proceeds I'm authorizing to be spent for defense costs. Let me ask you a question on that line. Suppose that Lehman's D&O policy reaches its limit and no longer advances defense costs for the individual defendants. Will Lehman then be required to advance defense costs pursuant to its bylaws? Yes. That's for the bylaws. The bankruptcy court... So it's obviously related to the bankruptcy, isn't it? Yes. And under this court's decisions in Belka, Fine, and Stowe, which were in no way limited... That's a contractual obligation that happened before bankruptcy. I mean, isn't it just like an ordinary debt? And therefore, the bankruptcy court might not advance it if it's just an ordinary debt to be paid like any other unsecured creditor debt. Yes, that's correct, Your Honor. So they won't be advancing the money. Two points, if I may, to respond to that. One is that the bankruptcy court does have the authority to reject that contract, but it doesn't have to. Second, Judge Peck in the Southern District Bankruptcy Case already has authorized the expenditure of estate funds to cover the defense costs of individuals for whom there was no insurance. There were individuals who were sued for things like employment discrimination, and there was not covered under D&O policies. I thought there was a time limit for rejecting contracts. So they either already accepted this one or rejected it, right? Or is there no time limit? I don't believe it's had to be pressed by the court yet. There's a claim in bankruptcy litigation, a contingent claim that's pending, but because the insurance proceeds haven't been exhausted, the court hasn't had to face the issue. Am I going to... Accept or reject? Right, exactly. Reject the contract. Okay, so it hasn't gotten there yet. Right, and then so Judge Peck's order, which is found on the docket at 2502, of which this court may take judicial notice, said for these employees and former employees for whom there is no insurance, I'm granting the estate's motion to advance millions of dollars to cover their defense costs so that they will be provided with a defense in this case. So it seems entirely possible that if these... The insurance policy here is exhausted and the indemnities go to court and seek to enforce their rights, that the court will allow the estate to expend funds to provide what it was required to provide under the bylaws, which, of course, is the same situation in the Belka, Fine, and Stowe cases. Those also were entities in bankruptcy for which the bankruptcy court could have, when the time came, say, I'm sorry, the bylaws are a contract, they're disallowed, but the court didn't do that there. That ultimate issue of will the contingent claim be allowed is to be decided by the bankruptcy court. How much is the... What's the limit of the D&O policy? Do we know that? Pardon me, Your Honor. How much is it? $180 million? There's a... Well, there's a dispute because, of course, the insureds are saying there's two policy years at issue here and the insurers are saying, no, no, it's only one policy year. So it's either $250 million or $500 million. Now, it's not likely that the costs of litigation are going to run that high for these... ..in this particular case. Honestly, Your Honor, the primary layer of coverage... I mean, you people get a lot of money. I know the counsel, but it seems to me that's a lot of money. The first layer of coverage, $20 million, was exhausted by defense costs last November. Uh-huh. There are over 40 law firms representing the various individuals, not only in the civil litigations, but also in the many criminal investigations, in the civil investigations. There are three investigations going on, the two congressional investigations and the FCIC investigation, the SEC, three U.S. attorneys' offices, and a lot of these individuals feel they need their individual counsel. So the proceeds are being eaten up very quickly. Is somebody reviewing whether the costs are reasonable? Whether they each... I mean, you say they each say they need individual counsel, but is the bankruptcy court looking at that? No, the insurers, the insurance companies, have gone back and said, why does this particular person need its counsel? And they are reviewing the bills very carefully. They don't provide car service home if someone works till 10 o'clock at night, or they reject a meal, or I get, you know, and we don't pay for Lexus, so believe me, they go over the bills, the insurance companies, very carefully. But the bankruptcy court, until the bankruptcy court is looking at these expenditures of the estate, it won't get addressed. I wanted to ask a question on the conflicting statutes. Yes. Assuming, arguendo, that I don't think much of the specificity analysis of the Second Circuit, where would that put it? Did the statutory analysis still come into play, or if I thought the securities provision was more specific, would that be the end of the inquiry? No, Your Honor, for two reasons of statutory construction. But if I may just point out something, the plaintiffs like to portray the Second Circuit's WorldCom decision as some outlier, and of course this court isn't going to just follow the Second Circuit because it's the Second Circuit, it's going to do its own analysis. But before that Second Circuit decision came down, five district courts found that 1452A should take precedence. And after WorldCom came down, no district court has gone that way other than a court that said, I decided this beforehand, I haven't changed my mind. So they have three district courts going their way, all of which said 22A is more specific. There's a court that goes the other way and says 1452 is more specific. Why don't you tell me the answer to my question? Okay. There are two principles. One is that repealing statutes by implication is disfavored, but particularly when it's a jurisdictional statute. So even if you have a more specific statute, if what you're trying to repeal by implication is jurisdictional, you should not do that. The second is that, and this is under the Supreme Court's decision in Radzenauer, if applying a more specific statute would violate the general statutory scheme of the general statute, then you should not find repeal by implication. And Congress does have a very broad statutory coherent scheme for dealing with bankruptcy. And the 1978 Bankruptcy Reform Act is very strong about bringing cases together. 1452A, which created related to jurisdiction, says, my red light is on, Your Honor. Finish your sentence. Thank you. It's going to be a long sentence. Go ahead. It says any claim or cause of action in a civil case can be removed on bankruptcy-related to grounds, with two exceptions. It does create one for tax court claims and it creates another one when a state is bringing a suit in its capacity as police power, which isn't happening here. And under the principle of expressio unius, when they say here's the law with two exceptions, then a third exception for 1933 Act claims shouldn't be read into that. I'm sorry, because it would. I'm continuing this. Your answer to my question is the statutory construction argument should apply in government no matter if you could, even if you could say that was a more specific statute. That's correct. That would be your answer. Yes. Okay. Thank you. Thank you. Thank you. And you've taken the time that was ceded to you. Thank you, David. Mr. Davidoff, you have rebuttal. Yes, Your Honor. I wanted to ask you a question, Mr. Davidoff, because it occurred to me. If New Jersey had sued under the 1934 Act, Securities Act, instead of the 1933 Securities Act, we wouldn't have this issue, right? We wouldn't have as strong an argument as I believe we have for remand. Yeah. Because Section 22A, both as reenacted in 1998, and there's a new section, 77 PD4, which is on that hand up, another one Congress underscored that state sovereigns and their political subdivisions are not to be removed to federal court when asserting these claims, but are to be remanded. And that's why I make the analogy, Your Honor, to a federal officer who has a judicial immunity. This is a state sovereign that we contend has a judicial immunity under principles of comity and specific congressional enactments. Don't those principles apply if you're being sued, but not when you sue? No, Your Honor, because Congress, I just respectfully disagree, because Congress has enactments starting in 1933 and then reenacts and adds to it in 1998 in SLUSA, which was a complete rewrite of the securities law, and says this is a specific exception that we are legislating for states and their pension plans. And it's not like 1334. Remember, 1334 related to jurisdiction. Congress expressly says the bankruptcy courts have original but not exclusive jurisdiction. Those three words, but not exclusive, follow original. And there is command after command, 1447D, even in 1452, in 1334 itself, and in these statutes that I've put before Your Honors, that such cases should be remanded. I have 30 seconds on counsel's argument on the merits, on the related two points, and I want to come back for a moment then to appellate jurisdiction. First of all, there's a letter. We reproduced it at pages 28 to 29 of our brief from the Lehman General Council saying, you know, we're not granting or denying your indemnification claim. We're expressing no opinion. There's the policy against indemnification for Securities Act violations in Eichenholz and HealthSouth and other cases. It's clear there would have to be another lawsuit to enforce that right, and that brings us within the rule of Pacor and Grace v. Sha'Carri. I thought that was the case, but then Ms. McGarry said that these defendants are being paid, their fees are being paid by the company. Doesn't that undermine what you just told us? Why would they be paying these hundreds of millions of dollars? Well, there was a stipulation. Because their lawyers are paying them. There was a stipulation in the bankruptcy court that the company's not paying them, Judge Hardiman. The insurance. Right, the insurers are paying it. There was a stipulation in the bankruptcy court that those are not part of the estate, and it was by consent, including New Jersey's consent, that the D&O policies were allowed to pay those fees. All right, fair enough. But every time another $100 million gets drawn down from the insurance pool of money, that has an effect on the estate, right? Because as soon as they exhaust the limits of that policy, then it's game on for the estate, is it not? Well, maybe for the bankrupt, but we're suing officers. We're not suing the bankrupt. We're suing former officers. Right, but related to jurisdiction, is it related to the bankruptcy? I mean, I guess what I thought the import of your 28-J letter, citing Grace, which made some sense, was that, look, this is so contingent because there's going to be I heard opposing counsel tell us that even if that might be the case, there's still a current detriment that the bankruptcy estate is suffering by virtue of this action, so therefore it's related to. Well, we don't – we completely disagree with that. We sued officers and directors, and the fact that we stipulated to allow these proceeds to be released in no way establishes any agreement to the proposition that this is related to, Your Honor. Can I just come back for whatever time you want to give me? Go ahead. We're not asking, Your Honors, to issue some sweeping pronouncement that the collateral order doctrine applies every time there's a refusal to remand a case. There are special circumstances here. We've got congressional enactments, several of them, including most recently in 1998, that give state sovereigns the absolute right not to be in federal court. That means there's no jurisdiction. We have respectfully – I think Judge Cabranes is a good judge. I think he got it wrong in that case because he had to rule both that there was related to jurisdiction and that there was a statutory conflict. WorldCom ignored SLUSA, Judge Rustani, completely ignored it. And if you look at the Tennessee – we cited both Tennessee consolidated retirement systems opinions in our briefs. The second one was by Judge Haynes after WorldCom. And he does a very good job of analyzing that. He shows that SLUSA is the subsequent enactment. What I handed up shows that, too, that Congress did pay attention to this, both the statutes themselves and the legislative history. That's 77P that you've done. That's what I handed up, Your Honor. Yeah, you did. That's – it is. It's an excerpt from 77P that applies. Right, added in 1998 to protect states. And then finally – Do you have legislative history to support your statement that it's to protect states? Your Honor, there is some discussed in – we didn't have room in our brief, but it's discussed in Judge Haynes' opinion, the second opinion. And does that talk about the legislative history? It does. There is some – there's a House conference report set forth in Judge Haynes' opinion. Of SLUSA. I'm sorry? Yes, of SLUSA. Legislative history of SLUSA to show that this was the intent, that these are – remember, SLUSA sends everything to federal court and then removes it and preempts it and dismisses it. It's only states, political subdivisions, and state pension plans and private parties that retain their rights under these acts after SLUSA. Class actions, private class actions, under state law are effectively preempted. So we're not asking for a sweeping opinion. What we're asking for is a narrowly targeted opinion, that in the context of this case where you've got a state sovereign with no – that has a right not to be in federal court, they don't have the duty to be dragooned through two different circuits with sharply contrasting law. If there wasn't sharply contrasting law, could you say the same thing? Well, I couldn't say that they had sharply contrasting law. I could say that they have the right not to be dragooned through two circuits and a plenary trial before they have the right to review. Well, you wouldn't have a plenary trial because under 1407 it's supposed to go back. But it has to come back to New Jersey. The district from which it came. Right. It would come back to New Jersey. And then we have to try it before we can get back up here again. Can I just add a couple things? There is a lot of case authority in this circuit for mandamus, a native appellate jurisdiction. I think Your Honor – I can't remember which one it was, Judge Slaughter, but I think Your Honor wrote one of the opinions. It's possible I wrote a lot. It's actually – More than 30 years. Go ahead. Right. It's actually even discussed in Federal Mogul Global at 300 F. 3rd, 368 at 378 and 379, which I think Your Honor authored. Oh, I did. You did. And the same is held in the Nascone v. Spudnuts, Hewlett v. Davis, and Pacor case. Pacor. Pacor is Judge Barr's opinion. Right. Note 9 of Pacor. Footnote 9. Which, incidentally, Pacor came up on a collateral estoppel. Collateral what do you mean? Sorry. I'm sorry. Collateral estoppels on my mind because, unfortunately, because it's subject matter jurisdiction, it's not clear that we have collateral estoppel against these defendants. If we ultimately, after all these years, win a judgment against them in the District Court in New Jersey and it comes up here, they would be free to suggest to Your Honors that there was never any subject matter jurisdiction, despite the fact that they removed it and negate all the orders. But collateral order, Pacor was a collateral order appeal, and there's also a discussion of review by Mandamus. And there's one other possibility. And that's in your brief. I mean, your brief. I think most of these are in our brief, certainly Pacor and Federal Mogul. And we do read the briefs. I know, Your Honor. I think the other thing that is not in the brief, candidly, is Your Honor actually wrote an opinion, Instructional Systems, Inc., the Computer Curriculum, and that's 35F3 813 at page 818, note 7. Say that again. Sorry, Your Honor. 35. Instructional Systems, Inc., the Computer Curriculum. I wrote that. 35F3 813 at page 818, note 7. That's a different procedural mechanism, Your Honor, and that's remanding to the district court for recertification under 1292B if you find you can't reach. Well, but, you know, the district court did it. It doesn't help much, but I don't know why the panel denied, refused to accept it. The Second Circuit accepted it. Judge Barry's panel didn't. I'm not sure I know why, but they didn't, and that's the end of that particular case. Well, not necessarily because if it were recertified on Your Honor's suggestion, if that were the last word, I think it would be recertified. We don't do that to each other. We really don't. But that doesn't mean that you haven't persuaded us in light of 77P that we shouldn't look at the practical effect. I mean, that's something we're going to have to discuss in conference, and you make a good case of that, and then we have to balance that against what the Supreme Court says, and you didn't mention the Sotomayor case, which I had forgotten to put into this. Mohawk? The one she just did. Is that Mohawk? Well, it's true the collateral order jurisdiction is narrow, but PACOR proves it's not completely evanescent. Yeah, but that's not a Supreme Court decision. Finally, just a few words. Federal, state, comedy. Federal, state, comedy. I think that is a consideration in deciding whether this narrow class of appeals should be entertained. That is a consideration that Your Honor should weigh. Thank you, Your Honor. Thank you very much. Thank you both for coming in, for accommodating the court that way. And it does present us with quite an issue. That's what we're here to decide. Thank you all. Thank you. Thank you, Your Honor.